IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOEL RIVAS, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 17 C 5467 |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Pro se Petitioner Joel Rivas filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] For the following reasons, the Court denies Rivas's § 2255 motion and declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

**PROCEDURAL BACKGROUND**

On February 1, 2011, a grand jury returned a superseding indictment charging Rivas with: (1) conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and quantities of marijuana in violation of 21 U.S.C. § 846 (Count One); (2) possession with intent to distribute quantities of cocaine and marijuana in violation of 21 U.S.C. § 841(a)(1) (Count Two); (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Three); and (4) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) (Counts Four and Five).

---

[1] The Court granted Petitioner's motions to extend the time to file his reply brief in support of his § 2255 motion granting the last extension motion on May 2, 2018, that set the reply brief deadline as June 4, 2018 – with no further extensions allowed. To date, Petitioner has failed to file any such reply brief. Instead, Petitioner has filed renewed motions under Federal Rule of Civil Procedure 59(e) and 60(b) in the underlying criminal matter, case no. 10 CR 0617-2, that the Court has denied in a separate ruling.

On February 25, 2011, the government filed a notice pursuant to 21 U.S.C. § 851 informing Rivas of the government's intention to seek increased punishment as a result of Rivas's three prior Illinois felony controlled substance violations. *See* 720 ILCS 570/401. The notice informed Rivas that because he had at least one prior conviction for a felony drug offense, he was subject to a mandatory minimum sentence of 20 years and a maximum sentence of life pursuant to 21 U.S.C. § 841(b)(1)(A)(ii).

On September 20, 2011, Rivas's co-defendant, Ismael Miranda, pleaded guilty, whereas, in July 2013, Rivas proceeded to trial. On July 18, 2013, a jury convicted Rivas on all counts of the superseding indictment. Moreover, the jury found, via a special verdict form, that Rivas was responsible for more than 5 kilograms of cocaine in connection with the drug conspiracy in Count One. In addition, the jury found that Rivas had possessed two firearms in furtherance of the drug charge in Count Two. Thereafter, on September 1, 2013, Rivas filed a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 and a motion for a new trial pursuant to Rule 33. The Court denied both motions on October 18, 2013. On October 23, 2013, the Court sentenced Rivas to a total term of 360 months in prison. *See* U.S.S.G. § 4B1.1(c)(3).

Rivas then filed a timely notice of appeal on November 11, 2013. On appeal, Rivas argued that the Court violated the Confrontation Clause of the Sixth Amendment and abused its discretion by denying him the ability to cross-examine the fingerprint identification expert at trial. On August 5, 2016, the United States Court of Appeals for the Seventh Circuit affirmed the Court's ruling. *United States v. Rivas,* 831 F.3d 931 (7th Cir. 2016).

On July 24, 2017, Rivas filed this timely § 2255 motion. Construing his pro se § 2255 motion and filings liberally, *see Terry v. Spencer,* 888 F.3d 890, 893 (7th Cir. 2018), Rivas

2

argues that both his trial and appellate counsel were constitutionally ineffective in violation of the Sixth Amendment. Also, Rivas asserts that the Court improperly sentenced him as a career offender because the Court erred when counting his Illinois drug convictions as predicate offenses in light of the Supreme Court's decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016). *See United States v. Montez,* 858 F.3d 1085, 1092 n.3 (7th Cir. 2017) ("Although *Mathis* was an Armed Career Criminal Act case, courts have observed that the approaches used to apply the career-offender enhancement and the Armed Career Criminal Act are similar and thus that *Mathis* is controlling in a Guidelines case.") (citation omitted).

## FACTUAL BACKGROUND

On February 18, 2010, Elgin police officers executed a search warrant at a storage unit located at 1460 Illinois Parkway in Elgin, Illinois ("Elgin storage unit"). At trial, Calvin Stringer, the owner of the storage unit, testified that he rented the unit to Rivas's co-defendant, Ismael Miranda, in late 2008 or early 2009. Further, Stringer testified that Miranda and Rivas worked on cars at the Elgin storage unit and that they had installed security cameras outside of the unit. Stringer also stated that Rivas wore a blue mechanic shirt with the nametag "Tony" on it when he worked at the storage unit.

During the February 18, 2010 search, Elgin police officers recovered quantities of marijuana and cocaine, as well as two firearms, namely, a 9mm handgun and a .357 loaded handgun. A trial, one of Rivas's wholesale customers, Corey Glass, testified that he gave Rivas the 9mm handgun to pay off a drug debt. Also at trial, Elgin Police Detective Beth Sterricker testified about the items recovered, and the government introduced photographs of the items and the actual items into evidence. Detective Sterricker also testified that they recovered a shirt

3

hanging on the wall with the nametag on the front pocket of the shirt that said "Tony." The shirt had a small bag in the pocket containing 2.1 grams of cocaine.

In total, the Elgin police officers recovered approximately 210 grams of cocaine and 490 grams of marijuana during their search of the storage unit. In addition, the Elgin police seized drug paraphernalia, including a vacuum sealer, several boxes of plastic bags, digital scales, bottles of Inositol Power (a cutting agent), a body-wire detector, and a large sprayer full of orange peels that emitted a strong citrus order. In the toolbox where police found the loaded .357 handgun, they also found five boxes of .38 caliber ammunition, a radio frequency scanner, a body-wire detector, two bags with cocaine, a large digital scale, and a bottle of Inositol. Further, the Elgin police recovered paperwork belonging to Rivas.

Rivas's co-defendant Miranda was at the storage unit when the Elgin police executed the search warrant. Police arrested him on state drug charges that same day. While detained at the Kane County Jail, Miranda called Rivas on March 3, 2010. The jail recorded the call and the government introduced it as evidence at trial. In doing so, the government called a Spanish interpreter to testify regarding the English translation of the call. During the call, the following exchange took place:

> MIRANDA: Hey, what's happening, bro? The … the law come down on us!
>
> RIVAS: Yeah …. right?
>
> MIRANDA: I just … got … got …got hold of a phone card; it was hard to get a hold of your number. Um…
>
> RIVAS: I see.
>
> MIRANDA: Um … put a stop … put a stop to all…
>
> RIVAS: Yeah.
>
> MIRANDA: … the shit, dude, because it's goddamn D.A., loco.

4

> RIVAS: Oh, yeah?
>
> MIRANDA: Yeah, it's not the feds. I thought it was the … the … the … the big one but no, it's just the D.A.

(R. 226, Trial Tr., at 760-61.) Also, during the call, Miranda told Rivas that the police were looking for him and that Miranda would not talk to the police about Rivas:

> MIRANDA: And truth is they're looking for you, loco.
>
> RIVAS: Mch! Naah?!
>
> MIRANDA: For real, loco. They asked me about you and don't know you.
>
> RIVAS: No shit.

(*Id.*, Trial Tr., at 761.)

Two of Rivas's wholesale cocaine and marijuana customers, Mark Liby and Corey Glass, also testified at the July 2013 jury trial. Liby testified how he had discussed purchasing cocaine from Rivas, and how Rivas had him meet his friend "Mexico" to pick up the cocaine. Liby identified co-defendant Miranda as "Mexico." Furthermore, Liby testified that after receiving cocaine from "Mexico," Liby paid Rivas for it. Liby also testified that he purchased the following quantities of cocaine from Rivas: (1) four ounces; (2) 4.5 ounces on two occasions; (3) nine ounces on one to two occasions; and (4) a kilogram of cocaine two to three times. Likewise, Glass testified that he began purchasing marijuana from Rivas in late 2008, and typically purchased between two and five pounds at a time. In addition, Glass testified that he purchased cocaine from Rivas specifically testifying that he purchased the following quantities of cocaine: (1) a half ounce; (2) one once on two occasions; (3) two ounces; (4) nine ounces; and (5) eighteen ounces "four or five, maybe six times."

Special Agent Christopher Labno of the Bureau of Alcohol, Tobacco & Firearms ("ATF") gave expert testimony at trial regarding narcotics trafficking. He testified, in part, that drug dealers keep guns at stash locations "[f]or the purpose of protecting themselves and their drug proceeds from robbery, debt collection, that type of thing." The government also called Edward Rottman, a fingerprint expert with the Illinois State Police, to testify at trial. Rottman specifically testified that he developed a latent partial print from the 9 mm handgun found in the storage unit, and that after he had conducted the side-by-side ACE-V test, he concluded that he was "totally certain" that the latent print was Rivas's fingerprint. During cross-examination, when defense counsel attempted to question Rottman regarding a different fingerprint examiner's conclusion in an unrelated case, the Court sustained the government's objection.

## LEGAL STANDARD

"Relief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013). To obtain relief under § 2255, a petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States, the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." 28 U.S.C. § 2255. A motion under § 2255 is not a substitute for a direct appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (relief under § 2255 "will not be allowed to do service for an appeal"); *Williams v. United States*, 879 F.3d 244, 248 (7th Cir. 2018). If a § 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default

6

and actual prejudice from the failure to appeal, or that enforcing the procedural default would lead to a fundamental miscarriage of justice. *See Farmer v. United States*, 867 F.3d 837, 842 (7th Cir. 2017); *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017). Because Sixth Amendment claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims may be brought for the first time in a § 2255 motion. *Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Perrone v. United States,* 889 F.3d 898, 909 (7th Cir. 2018).

## ANALYSIS

### I.   Ineffective Assistance of Trial Counsel Claims

In his § 2255 motion, Rivas argues that his trial counsel provided constitutionally ineffective assistance of counsel. To establish ineffective assistance of trial counsel in violation of the Sixth Amendment, Rivas must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014) (citation omitted); *see also Delatorre,* 847 F.3d at 845 (courts apply a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (citation omitted). To establish prejudice, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," instead Rivas must demonstrate "a reasonable

7

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693, 695; *see also Lee v. Avila*, 871 F.3d 565, 571 (7th Cir. 2017). If Rivas fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *Id.*, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant").

        **A.**        **Sentencing Enhancement Under U.S.S.G. § 2K2.4**

Rivas argues that his trial counsel erred in failing to challenge the firearm enhancement under U.S.S.G. § 2K2.4 because courts cannot enhance a sentence for use of a firearm if a defendant is also being sentenced for using a firearm under 18 U.S.C. § 924(c). *See United States v. Eubanks*, 593 F.3d 645, 649 (7th Cir. 2010) ("If a defendant is sentenced for using a firearm in furtherance of a violent crime under § 924(c), the sentencing court may not enhance the defendant's sentence under the guidelines for the same weapon and conduct that underlie the § 924(c) conviction."). At Rivas's sentencing hearing, however, counsel discussed U.S.S.G. § 2K2.4 in reference to the two-level enhancement pursuant to § 2D1.1(b)(1). (R. 223, 10/23/13, Sent. Tr., at 14.) And, as the Court recognized when applying the two-level sentencing enhancement under § 2D1.1(b)(1), under the circumstances, the impact on the guideline enhancements was "academic" due to Rivas's career criminal status and conviction of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) because under U.S.S.G. § 4B1.1(c)(3) his sentencing guideline range was 360 to life. *See* 21 U.S.C. § 841(b)(1)(A)(ii). Therefore, even if trial counsel's performance was constitutionally deficient in relation to the firearm enhancement under § 2K2.4, Rivas cannot established that he was prejudiced under the second prong of *Strickland* because any such alleged error did not lead to a longer sentence. *See Glover v. United States*, 531 U.S. 198, 121 S.Ct. 696, 148 L.Ed.2d 604

8

(2001). Accordingly, Rivas's ineffective assistance of trial counsel argument based on the sentencing guidelines is unavailing.

### B. Supplemental Jury Instructions

Next, Rivas contends that his trial counsel was constitutionally ineffective because she failed to request supplemental jury instructions in relation to the charge of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and quantities of marijuana in violation of 21 U.S.C. § 846 in Count One of the superseding indictment. More specifically, Rivas asserts that trial counsel's failure resulted in the Court not instructing the jury about an express or implied agreement. Rivas's argument is factually baseless because the Court instructed the jury as follows:

> A conspiracy is an express or implied agreement between two or more persons to commit a crime. A conspiracy may be proven even if its goals were not accomplished.
>
> In deciding whether the charged conspiracy existed, you may consider all of the circumstances, including the words and acts of each of the alleged participants.

(R. 179, Jury Instructions, at 22; R. 227, 7/18/13 Trial Tr., at 1055.)

Further, Rivas argues that his trial counsel erred because she did not request the buyer-seller jury instruction as set forth in Seventh Circuit Pattern Criminal Jury Instruction 5.10(A). A defendant is only entitled to a buyer-seller jury instruction if: "(1) [he] proposed a correct statement of the law; (2) the evidence lends some support to the defendant's theory; (3) [his] theory of defense is not part of the charge; and (4) the failure to include [his] instruction would deny him a fair trial." *United States v. Lomax*, 816 F.3d 468, 476 (7th Cir. 2016) (citation omitted). As the Seventh Circuit teaches, "[w]e have repeatedly stated that a district court 'should give a buyer-seller instruction where the jury could rationally find, from the evidence

9

presented, that the defendant merely bought or sold drugs but did not engage in a conspiracy[,]'" but "[w]hen the evidence of a conspiracy is strong, we often uphold the district court's refusal to give a buyer-seller instruction." *Id.* (citations omitted).

      Here, there was strong trial evidence that Rivas and Miranda were engaged in a joint criminal objective to distribute drugs. At trial, the jury heard the March 3, 2010 telephone exchange, via an English translation, at which time Rivas and Miranda discussed Miranda's arrest in relation to their conspiracy. The jury also heard cooperator testimony from Rivas's wholesale cocaine and marijuana customers, one of whom stated that he discussed purchasing cocaine from Rivas, after which Rivas directed him to pick up the cocaine from Miranda. Evidence recovered from the Elgin storage unit over which Rivas and Miranda had control included indicia of drug trafficking, such as a vacuum sealer, several boxes of plastic bags, digital scales, and bottles of a cutting agent. The Elgin police also recovered 210 grams of cocaine and 490 grams of marijuana at the storage unit.

      At trial, Rivas emphatically testified that he did not buy or sell cocaine. As such, he was not entitled to a buyer-seller instruction regarding the conspiracy to distribute cocaine. While Rivas testified that he bought and sold quantities of marijuana, the strong conspiracy evidence still did not entitle him to a buyer-seller instruction. Even if it did warrant a buyer-seller instruction for marijuana, the Court's sentencing on the conspiracy count was driven by the jury's finding that Rivas was responsible for more than 5 kilograms of cocaine in connection with the drug conspiracy, and thus counsel's failure to request a buyer-seller instruction in relation to the marijuana transactions did not result in any prejudice.

      Accordingly, trial counsel's conduct did not amount to a deficient performance under *Strickland* because the evidence presented at trial did not support the buyer-seller instruction in

10

the first instance. In other words, counsel's performance was objectively reasonable under the circumstances. *See Tucker v. United States*, 889 F.3d 881, 884 (7th Cir. 2018). Furthermore, Rivas has not established prejudice, especially because he failed to argue that the jury instructions – as a whole – did not correctly instruct the jury of the applicable law. *See United States v. Grady*, 746 F.3d 846, 848 (7th Cir. 2014). Thus, the Court rejects this aspect of Rivas's ineffective assistance of trial counsel claim

### C. Participation in Conspiracy

Examining his pro se § 2255 filings liberally, Rivas also asserts that his trial counsel was ineffective because she failed to argue that the record did not support Rivas's involvement in the drug trafficking conspiracy. Despite Rivas's argument to contrary, his trial counsel repeatedly attempted to undermine the evidence and the government's arguments concerning the conspiracy by highlighting Miranda's culpability and involvement, including evidence that Miranda ran his business out of the Elgin storage unit, that Rivas was not at the storage unit on February 18, 2010 when the Elgin police searched the unit, and that the police arrested Miranda, not Rivas, on that date.

Furthermore, in closing arguments, trial counsel unequivocally argued that Rivas did not conspire with Miranda to possess with the intent to distribute 5 kilograms of cocaine. Also during closing arguments, trial counsel highlighted the jury instruction that included the following language: "Mere proximity to drugs, mere presence on the property where drugs are located and mere association, without more, with the person who does control the drugs on the property on which drugs are found is insufficient to support a finding of possession." (R. 236, 7/18/13, Trial Tr., at 19.) Further, defense counsel distinguished Rivas's relationship with government witnesses Glass and Liby in an attempt to distance Rivas from the conspiracy charge

in Count One of the superseding indictment. In addition, counsel challenged the jury's guilty verdict on the conspiracy charge in Rivas's Rule 29 motion for acquittal arguing that there was insufficient evidence to sustain Rivas's conspiracy conviction.[2]

Based on trial counsel's repeated challenges to the government's evidence of Rivas's involvement in the drug trafficking conspiracy, Rivas has failed to establish that his trial counsel's performance fell below an objective standard of reasonableness to satisfy the first *Strickland* prong. *See Tucker v. United States*, 889 F.3d 881, 884 (7th Cir. 2018).

### D. Witness Credibility

Rivas also maintains that his trial counsel was constitutionally ineffective for failing to challenge the credibility of the government's witnesses Glass and Liby on cross-examination. In particular, Rivas argues that trial counsel failed to attack these witnesses regarding their extensive criminal backgrounds and in relation to their contradictory accounts of the relevant drug transactions. Rivas's arguments are not supported by the trial record. First, on direct examination, the government fronted Liby's and Glass's extensive criminal backgrounds and that they were incarcerated, after which defense counsel explored the witnesses' criminal backgrounds in detail on cross-examination – along with questioning them about their assisting in Rivas's prosecution. Second, on cross-examination, defense counsel also asked Liby and Glass specific questions about the drug transactions with Rivas and Miranda. Nevertheless, Rivas points to Glass's trial testimony where he explained how he purchased cocaine from Rivas, at which time Glass stated that he "hypothetically" bought four-and-a-half ounces. Based on this testimony, Rivas posits that defense counsel's failure to attack this testimony amounted to ineffective assistance of counsel. Under *Strickland*, however, courts "assess counsel's work as a

---

[2] Rivas's perfunctory and undeveloped argument that "appellate counsel was ineffective for failing to raise this issue on direct appeal" is waived. *See Tobey v. Chibucos*, 890 F.3d 634, 652 (7th Cir. 2018).

whole, and it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." *Mertz v. Williams*, 771 F.3d 1035, 1042 (7th Cir. 2014) (citation omitted). Therefore, any such failure to challenge Glass' statement that one sale was "hypothetical" does not amount to a deficient performance as Rivas argues, especially in light of trial testimony about other drug transactions.

Moreover, in the closing arguments, defense counsel attacked both Liby's and Glass's testimony arguing that they were cooperators and convicted felons and that their testimony was not worthy of belief. Trial counsel also surmised in closing that Liby and Glass were very motivated to please the prosecution so that their sentences would be reduced. In addition, the Court instructed the jury to consider the testimony of Glass and Liby "with caution and great care," and courts presume that jurors follow jury instructions. *See Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 635 (7th Cir. 2018).

Based on counsel's thorough cross-examination of Liby and Glass at trial, as well as defense counsel's closing arguments, Rivas's argument that trial counsel's performance amounted to ineffective assistance of counsel is untenable. *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential"). In summary, Rivas's ineffective assistance of trial counsel claims fail.

**II.     Ineffective Assistance of Appellate Counsel Claims**

Rivas also argues that his appellate counsel claim was constitutionally ineffective. As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland* to evaluate the effectiveness of appellate counsel. *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obviously and

clearly stronger than the claims counsel did raise on appeal. *Walker v. Griffin,* 835 F.3d 705, 709 (7th Cir. 2016) ("Appellate ineffective-assistance claims require the reviewing court to look at the issue that appellate counsel failed to raise, and determine whether that issue was 'obvious and clearly stronger' than issues that appellate counsel did raise."). In this context, appellate counsel need not raise every non-frivolous claim, but should select among claims to maximize the likelihood of success on appeal. *See Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Makiel*, 782 F.3d at 897. To establish the *Strickland* prejudice prong, Rivas must show that there is a reasonable probability that the issues appellate counsel did not raise would have changed the outcome of his appeal. *Miller v. Zatecky,* 820 F.3d 275, 276 (7th Cir. 2016); *Richardson v. Lemke,* 745 F.3d 258, 273 (7th Cir. 2014).[3]

### A. Drug Quantity Findings

In his § 2255 motion, Rivas argues that his appellate counsel was constitutionally ineffective for failing to appeal the sentencing court's drug quantity findings. As background, before trial, the government filed a notice pursuant to 21 U.S.C. § 851 informing Rivas of the government's intention to seek increased punishment as a result of Rivas's three prior Illinois felony controlled substance violations. The notice informed Rivas that because he had at least one prior conviction for a felony drug offense, he was subject to a mandatory minimum sentence of 20 years and a maximum sentence of life under 21 U.S.C. § 841(b)(1)(A)(ii). At the conclusion of trial, the jury convicted Rivas on all of the charges in the superseding indictment and, via special verdicts, found that Count One involved 5 kilograms or more of mixtures

---

[3] Rivas's argument that his appellate counsel completely abandoned him is not supported by the record, therefore, the two-prong standard under *Strickland* applies to Rivas's ineffective assistance of appellate counsel claims. *Cf. Smith v. Brown,* 764 F.3d 790, 795 (7th Cir. 2014) ("in cases where a defendant has been effectively denied the right to counsel 'altogether,' prejudice may be presumed") (citing *United States v. Cronic*, 466 U.S. 648, 659 (1984)).

containing cocaine and a detectable amount but less than 50 kilograms of mixtures containing marijuana and that Count Two involved a detectable amount but less than 500 grams of mixtures containing cocaine and a detectable amount but less than 50 kilograms of mixtures containing marijuana. The evidence overwhelmingly supported these findings.

At Rivas's sentencing hearing, although the Court made explicit drug quantity findings, in the end, because Rivas was a career offender and had been convicted of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), his sentencing guideline range was 360 to life pursuant to U.S.S.G. § 4B1.1(c)(3). Therefore, even if Rivas's appellate counsel had successfully appealed the Court's drug quantity and the jury's special verdict findings, Rivas's sentence of 360 months would not have changed because Rivas was a career offender under U.S.S.G. § 4B1.1(c)(3), and thus his offense level was 37 and his criminal history category was VI with a resulting guideline range of 360 to life. In this context, Rivas's argument that his appellate counsel's failure to challenge the Court's drug quantity findings is unavailing because he cannot establish prejudice as required under *Strickland*. *Cf. United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011) ("an attorney's unreasonable failure to identify and bring to a court's attention an error in the court's Guidelines calculations that results in a longer sentence may constitute ineffective assistance entitling the defendant to relief.").

### B. Sentencing Guidelines Arguments

Similarly, Rivas argues that appellate counsel was constitutionally ineffective for failing to argue on appeal that the Court misapplied U.S.S.G. § 2K2.4 and § 2D1.1(b)(1). As discussed above, Rivas cannot establish that counsel's failure to raise these arguments prejudiced him because of his career offender status resulting in a guideline range of 360 to life. In short, any error in failing to raise these sentencing arguments on appeal would not have affected his

15

sentence, and thus Rivas cannot establish prejudice under *Strickland*. *See Ashburn v. Korte,* 761 F.3d 741, 751 (7th Cir. 2014) (Without a meritorious claim, petitioner "cannot possibly demonstrate that he was prejudiced by his appellate counsel's failure to argue such a claim."). Rivas's arguments based on counsel's failure to argue sentencing guideline issues on appeal therefore fails.

### C. Sufficiency of the Evidence

Rivas's remaining ineffective assistance of appellate counsel claims involve the sufficiency of the evidence underlying his convictions that the Court discussed in detail in denying his Rule 29 motion for judgment of acquittal. "A challenge to the sufficiency of the evidence can be successful only when, after viewing the evidence in the light most favorable to the prosecution," the court is "convinced that no rational jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Caguana*, 884 F.3d 681, 687 (7th Cir. 2018). As the Seventh Circuit has repeatedly explained, in challenging the sufficiency of the evidence underlying a conviction, a defendant bears a heavy burden that is nearly insurmountable. *See United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017).

#### 1. Knowing Possession of a Controlled Substance

Rivas first argues that his appellate counsel was constitutionally ineffective for failing to challenge the sufficiency of the evidence underlying his conviction of possession with the intent to distribute quantities of cocaine and marijuana in violation of 21 U.S.C. § 841(a)(1) as charged in Count Two of the superseding indictment. Any such argument on appeal was not obviously and clearly stronger than the issue raised for the simple fact that Rivas, himself, testified at trial that Mark Liby and Corey Glass bought marijuana from him. (R. 227, 7/18/13 Tr., at 869-70.) Evidence presented at trial also included physical evidence recovered from the February 18,

2010 search of the Elgin storage unit and the storage unit owner's testimony, as well as Detective Sterricker's testimony regarding the cocaine and marijuana seized at the storage unit. Further, both Liby and Glass testified that they purchased cocaine and marijuana from Rivas. Under these circumstances, appellate counsel's decision not to bring this issue on appeal was sound strategy in light of the heavy, almost insurmountable burden in challenging the sufficiency of the evidence. *See Jones v. Barnes,* 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Therefore, Rivas's ineffective assistance of appellate counsel argument based on the evidence underlying his § 841(a)(1) conviction is without merit.

### 2. Knowing Possession of a Firearm in Furtherance of Drug Trafficking

Next, Rivas asserts that appellate counsel was constitutionally ineffective for failing to argue on appeal that the government did not prove he knowingly possessed a firearm in furtherance of a drug trafficking crime as charged in Count Three of the superseding indictment. Again, any such argument on appeal was not clearly stronger than the Confrontation Clause argument appellate counsel did raise. *See Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015) ("An attorney is not expected to raise every possible non-frivolous claim on appeal; winnowing down possible claims to those an attorney believes are strongest is a classic example of a strategic decision.").

Keeping in mind that possession can be actual or constructive, evidence in the record – viewed in favor of the prosecution – revealed that Rivas knowingly possessed both firearms recovered from the Elgin storage locker in furtherance of the sale of cocaine and marijuana. At trial, for example, Detective Sterricker testified that on February 18, 2010, when the Elgin police

17

executed a search warrant at the Elgin storage unit, the officers recovered the 9mm handgun from one of the desk drawers and the .357 loaded handgun from a large toolbox in the main area of the storage unit. Other trial evidence included the fingerprint expert testifying that a latent fingerprint found on the 9mm handgun matched a known fingerprint of Rivas. Also, evidence showed that Rivas ran the drug operation out of the Elgin storage unit with Miranda and that Rivas had control over the unit and its contents. This evidence established that Rivas had constructive possession of the firearms, namely, he had the ability and intention to exercise direction or control over them. Other evidence, including Glass testifying that he gave the 9 mm handgun to Rivas to pay off a drug debt, and Liby testifying that Rivas pulled out the 9 mm gun to show Liby when he was buying drugs, further underscores Rivas's possession of the firearms in furtherance of drug trafficking. In short, appellate counsel's decision not to challenge the sufficiency of the evidence underlying the § 924(c) charge was a sound tactical decision. As such, Rivas's argument concerning the sufficiency of the evidence underlying his § 924(c) conviction is unavailing.

### III.     Career Offender Sentencing Guideline

Last, construing his pro se filings liberally, Rivas argues that the Court erred by counting his Illinois drug convictions as career offender predicates under U.S.S.G. § 4B1.1 in light of the Supreme Court's decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016) and the Fifth Circuit's decision in *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016). In particular, Rivas asserts that Illinois' unlawful delivery of a control substance statute, namely, 720 ILCS 570/401, does not qualify as "controlled substance offense" for purposes of U.S.S.G. § 4B1.1 because the elements of that Illinois offense do not fit within the definition of "controlled substance offense" under U.S.S.G. § 4B1.2(b). Not only has the Seventh Circuit soundly rejected this argument in a

18

case that was on direct appeal, *see United States v. Redden*, 875 F.3d 374, 375 (7th Cir. 2017), but the Supreme Court has yet to declare *Mathis* retroactive on collateral review. *See Holt v. United States*, 843 F.3d 720, 722 (7th Cir. 2016). The Court therefore denies this aspect of Rivas's § 2255 motion.[4]

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.* at 336; *Stechauner v. Smith,* 852 F.3d 708, 718 (7th Cir. 2017). Under this standard, Rivas must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Here, Rivas has not demonstrated that reasonable jurists would debate that his trial and appellate counsel were constitutionally ineffective or that his *Mathis* argument has merit and is retroactive on collateral review. The Court therefore declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

---

[4] Because the motion, files, and records of this case conclusively show that Rivas is not entitled to any relief under § 2255, the Court need not hold an evidentiary hearing. *See Perrone v. United States,* 889 F.3d 898, 910 (7th Cir. 2018); 28 U.S.C. § 2255(b).

## CONCLUSION

The Court denies Rivas's motion to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** June 20, 2018

**ENTERED**

_____
**AMY J. ST. EVE**
**United States Circuit Court Judge**
**Sitting by Designation**